J-S81005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ANGEL VASQUEZ-DIAZ | |
| Appellant | No. 369 EDA 2014 |

Appeal from the Judgment of Sentence September 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008880-2012

BEFORE: BOWES AND MOULTON, JJ., AND STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                          **FILED MAY 22, 2017**

Angel Vasquez-Diaz appeals *pro se* from the aggregate judgment of sentence of thirty-five to seventy years incarceration imposed after a jury found him guilty of rape by forcible compulsion, involuntary deviate sexual intercourse with a child, unlawful contact with a minor, endangering welfare of a child, indecent assault, and terroristic threats. Since Appellant was sentenced to a mandatory minimum sentence under a statute that has been declared unconstitutional, we vacate judgment of sentence and remand for resentencing. In all other respects, we affirm.

The minor victim in this matter, B.P., lived with her mother and three siblings in her mother's home. N.T. Vol. I, 5/21/13, at 41-43. Appellant, who was dating B.P.'s mother, would often stay the night. *Id*. at 41. One

_____
* Former Justice specially assigned to the Superior Court.

day, Appellant followed B.P. from the shower to her bedroom. *Id*. at 43. With the aid of a diagram, B.P. testified that Appellant rubbed his penis on her vaginal area and inserted his penis into her anus. *Id*. at 52-56. He told her that if she told anyone, he would kill her family. *Id*. at 61. B.P. eventually told her sister, C.P. *Id*. at 59.

C.P. testified that in March of 2012, B.P. told her that Appellant had touched her. *Id*. at 80. She immediately called their older sister, Aisha. *Id*. at 81. Aisha, in turn, called B.P's father, who took C.P. and B.P. to the hospital. *Id*. at 113. C.P. also testified that her mother said Appellant had watched C.P. while she took a shower, and that she awoke several times to see Appellant watching her sleep. *Id*. at 82-84.

Philadelphia Police Officer Leonard Johnson was dispatched to the hospital for the reported rape, where he met B.P., C.P., and their father. *Id*. at 21. He spoke to B.P., who told him that Appellant raped her on January 3, 2012. *Id*. at 23, 28.

The Commonwealth also presented Dr. Marcia McColgan, an expert witness in the field of pediatric child abuse. N.T., 5/22/13, at 32. She evaluated B.P. on April 24, 2012, and observed an area where there was almost no hymen, which she explained can occur in child sexual abuse cases but does not necessarily prove that penetration occurred. *Id*. at 44-45. Dr. McColgan also testified that the anus is meant to stretch, and that penetration can occur without lasting physical trauma. Moreover, where

- 2 -

superficial injury has occurred, that trauma can heal without any residual scarring. *Id*. at 45. She also noted that B.P. stated the incident occurred in January or February. *Id*. at 46.

Appellant was found guilty of the aforementioned crimes and sentenced to an aggregate term of thirty-five to seventy years imprisonment. This sentence included the imposition of a mandatory minimum term of no less than ten years incarceration.[1] *See* 42 Pa.C.S. § 9718. During the pendency of these proceedings, that statute was declared unconstitutional in its entirety. *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016). The Commonwealth concedes that Appellant is entitled to resentencing.

Appellant filed timely post-sentence motions, which were denied by operation of law, followed by a timely notice of appeal. Appellate review was repeatedly delayed by the unavailability of trial transcripts. On May 28,

---

[1] We note that the Commonwealth correctly states Appellant was convicted of rape by forcible compulsion, 18 Pa.C.S. § 3121(a)(1), while the trial court opinion states that the "mandatory minimum sentence [was] for his conviction of having sexual contact with a victim under the age of 13 years . . . pursuant to 42 Pa.C.S.A. § 9718(a)(3)[.]" However, § 9718(a)(3) applies to a conviction of 18 Pa.C.S. § 3121(c), which is rape of a child. For unknown reasons, the Commonwealth did not elect to proceed on the rape of a child charge.

2015, the trial court held a **_Grazier_**[2] hearing and permitted Appellant to represent himself on appeal.

Appellant filed a new concise statement of errors complained of on appeal, and the trial court authored its opinion on March 23, 2016. Appellant presents for our review the same issues raised in his Pa.R.A.P. 1925(b) statement, which we summarize as follows:

I.   The trial court erred in recording the verdict as the jurors did not unanimously agree.

II.  The trial court improperly admitted testimony that Appellant watched the victim's sister showering and sleeping.

III. The trial court improperly prohibited Appellant from cross-examining the victim's sister about her drug use.

IV.  The trial court improperly permitted several jurors to be seated on the panel.

V.   The trial court impermissibly permitted the jurors to receive a transcript of the expert witness's testimony.

VI.  The Commonwealth orchestrated the proceeding through deliberate deception.

VII. Insufficient evidence supported the conviction for rape by forcible compulsion.

VIII. The verdict for rape is against the weight of the evidence.

IX.  Appellant is serving an illegal mandatory minimum sentence.

_____

[2] **_Commonwealth v. Grazier_**, 713 A.2d 81 (Pa. 1998).

Appellant's brief, *passim*.

Appellant's first issue concerns the answer of juror number one following Appellant's request to poll the jury. When the foreperson asked, "Do you agree or disagree with the verdict as stated?", the juror replied, "Yes." Since this question as answered was clearly ambiguous, Appellant claims the verdict was not unanimous. The Commonwealth asks us to find the issue waived, noting that Appellant has attached to his brief an excerpt of the transcript which is not included in the certified record. In the alternative, the Commonwealth asks us to deem the claim waived because Appellant failed to object to the ambiguous answer.

We decline to find the issue waived on the basis that Appellant failed to properly include the transcript in the record. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006) (citation omitted). However, the trial court's opinion remarks that "[t]here was an extraordinary delay in the production of the entire set of trial transcripts . . . as requested by the defendant[.]" Trial Court Opinion, 3/21/16, at 2. On June 5, 2013, the court issued an order directing the production of all notes of testimony. Order, 6/5/13, at 1. Yet, as of the **Grazier** hearing on May 28, 2015, several portions of the proceedings had yet to be transcribed, prompting the

court to issue yet another order.  N.T., 5/28/15, at 13-15.  Furthermore, the trial court addressed this claim in its opinion, and, while not directly quoting the relevant portions of the transcript, the court's opinion states, "Although the question 'Do you agree or disagree with the verdict as stated?,' in retrospect, was not artfully crafted by court staff . . . the juror did not raise any issue or concern in regard to the verdict[.]"  Trial Court Opinion, 3/21/16, at 5.  Thus, the lack of a transcript is not fatal to our review and we shall address the merits.

We now examine whether Appellant waived this issue due to his failure to object to the supposed lack of unanimity.  A defendant is permitted by Rule to poll the jury before the verdict is recorded.  Pa.R.Crim.P. 648(G). Our Supreme Court has explained the purpose of jury polling as follows:

> The polling of the jury is the means for definitely determining, before it is too late, whether the jury's verdict reflects the conscience of each of the jurors or whether it was brought about through the coercion or domination of one of them by some of his fellow jurors or resulted from sheer mental or physical exhaustion of a juror. Manifestly, the right is of especial importance where a verdict carrying capital punishment has been rendered.

**Commonwealth v. Downey**, 732 A.2d 593, 595 (Pa. 1999) (quoting **Commonwealth v. Martin**, 109 A.2d 325, 328 (Pa. 1954)).  As indicated, polling must be timely conducted.  In **Downey**, the trial court refused the defendant's request to poll the jury after the court announced that the verdict had been rendered but before the jury was released.  Our Supreme Court held that this was erroneous and awarded a new trial.  In reaching this

- 6 -

result, the Court noted that any request to poll is timely if made before the jury is discharged. "Consistent with our established case law, we understand Rule 1120(f) to require that a trial court entertain a motion to poll the jury **at any time prior to dispersal of that jury**." *Id*. at 595 (emphasis added).[3]

Applying these principles, we find that Appellant's claim has been waived. Unlike **Downey**, polling was conducted; Appellant simply maintains that the juror's answer was ambiguous. However, nothing prevented Appellant from asking clarifying questions if he truly believed that the juror did not agree with the verdict. Critically, Appellant also failed to object that the verdict was not unanimous after the polling was conducted, which would have given the trial court the opportunity to further question the juror. Thus, asserting ambiguity at this stage in the proceeding comes far too late, and the claim is waived.

Appellant's second issue pertains to the pre-trial evidentiary ruling granting the Commonwealth's motion *in limine*. At issue was the admissibility of the evidence that Appellant observed C.P. while she was showering and sleeping. With respect to a pretrial ruling by a court as to the admissibility of this evidence, the following standard of review applies:

_____

[3] Rule 1120(f) was renumbered effective April 1, 2001.

The admissibility of evidence is within the sound discretion of the trial court, and we will not disturb an evidentiary ruling absent an abuse of that discretion. Pennsylvania Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). Such evidence may be admitted, however, if offered for a valid purpose such as proving the existence of a common scheme, establishing an individual's motive, intent, or plan, or identifying a criminal defendant as the perpetrator of the offense charged. *See* Pa.R.E. 404(b)(2)[.] In order for evidence of other criminal activity to be admissible to establish a common scheme, two conditions must be satisfied: (1) the probative value of the evidence must outweigh its potential for prejudice against the defendant, *see* Pa.R.E. 404(b)(3); and (2) "a comparison of the crimes must establish a logical connection between them." ***Commonwealth v. Miller***, 541 Pa. 531, 664 A.2d 1310, 1318 (1995).

***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa. 2014) (some citations omitted). The trial court held that the evidence establshed a common plan or scheme. The Commonwealth points to the following facts in support of upholding that determination:

Here, defendant's act of invading C.P.'s privacy was very similar to his rape of B.P. The incidents occurred less than three months apart. The victims of both acts were minor girls and sisters, who lived in the same house with their mother and had the same relationship to defendant, their mother's boyfriend. Both acts occurred in their house and while the girls were in the particularly vulnerable position of showering or shortly thereafter. The evidence was admissible because it revealed defendant's plan of exploiting his access to B.P. and C.P. for sexual gratification.

Commonwealth's brief at 10-11. Appellant, on the other hand, highlights that the similarities do not rise to the level of a distinctive signature. He additionally notes that the other acts of viewing C.P. in the shower and

- 8 -

sleeping established, at best, that Appellant was a voyeur, and thus the prior acts do not constitute a common scheme of rape.

We find no error. In order to establish a common scheme, our cases consider the degree of similarities between the prior acts and the crimes in question. The non-exclusive set of circumstances we consider includes the victims, acts, location, and any relationship to the accused. *Commonwealth v. O'Brien*, 836 A.2d 966 (Pa.Super. 2003), is instructive. Therein, we reversed a pre-trial order barring the Commonwealth from introducing, in a prosecution for sexual assault of a minor, evidence regarding O'Brien's prior sexual assault convictions of two other victims. The trial court denied the motion, holding that the acts were "not unlike the facts and circumstances in many cases of sexual assaults against children." *Id*. at 969 (quoting trial court opinion). We reversed, finding that all the victims shared similar characteristics, including race, age, location of crime, and relationship to the defendant. We opined that the trial court failed to consider the factual similarities of the incidents in their entirety. *Id*. at 970-71.

Appellant's argument in support of error advances the position rejected by *O'Brien*, as he asserts the acts were not "so unusual and distinct as to constitute a 'signature' probative of rape." Appellant's brief at 10. He relies on *Commonwealth v. Elliot*, 700 A.2d 1243 (Pa. 1997). In *Elliot*, the accused was found guilty of first-degree murder, rape, and other

charges. The defendant, along with Frank Nardone, took the victim to Nardone's apartment. *Id*. at 1247. When Nardone awoke the next afternoon, he found the victim's naked and battered body. After determining she was dead, he called the police. The autopsy determined the victim had been raped and strangled. *Id*. The defendant gave a statement to police, in which he claimed he had consensual sex with the victim the evening of her murder and that she was alive when he left her. *Id*. The Commonwealth introduced evidence from three prior assaults committed by the defendant against women who, like the victim, were white women in their twenties, and had been choked or beaten. Our Supreme Court upheld the introduction of this evidence under the common scheme theory, but suggested that the theory applied only where the "crimes are so related that proof of one tends to prove the others." *Id*. at 1249.

*Elliot* is distinguishable, because in that case the prior acts were introduced to establish identity of the perpetrator, while B.P. directly identified Appellant. A higher degree of similarity between crimes is required when the purpose of the prior crimes is to establish the accused committed the distinctive acts for which he stands trial. Here, however, B.P. testified that Appellant committed the rape. Thus, the prior acts were used to bolster the credibility of B.P.'s account. *O'Brien* explained the distinction:

- 10 -

> We agree with the Commonwealth that [two cases cited by O'Brien] are distinguishable from the instant matter. In those cases, the relevance of that evidence was to be used to identify the perpetrator, while here the admission of the evidence of the prior crimes was relevant to establish a common scheme, plan or design and, thus, bolster the victim's credibility.

*Id*. at 970 (footnote omitted).

We also reject Appellant's claim that, since the other acts did not culminate in rape, it cannot fall under the common scheme umbrella. Nothing in our Rule 404(b) precedents suggests that the other acts must be at least as serious as the charged offenses. This point is demonstrated by **Commonwealth v. Dunkle**, 602 A.2d 830 (Pa. 1992), in which our Supreme Court addressed the admissibility of prior sexual misconduct between the defendant and the victim:

> We do not believe that the appellee had to engage in the same, exact sexual misconduct for which he was charged in order for the testimony to be admissible. Rather, the testimony concerning his misconduct was admissible to show that the appellee's sexual misconduct was of a continuing and escalating nature. McCormick on Evidence states that prior sexual misconduct with the victim is admissible "[t]o show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." McCormick, Evidence § 190, at 449 (2d ed. 1972). The Courts of the Commonwealth have previously relied on this section of that treatise as authoritative.

*Id*. at 839. While **Dunkle** concerns prior bad acts committed against the same victim, that fact was obviously not dispositive. **O'Brien**, **supra**; **Commonwealth v. Luktisch**, 680 A.2d 877 (Pa.Super. 1996) (defendant's biological daughter permitted to testify about sexual abuse in prosecution for abuse against stepdaughter).

- 11 -

Applying the foregoing precedents, we do not find that the court abused its discretion. The relationship of Appellant to the two minor girls is exactly the same, as both were daughters of his girlfriend. Part of the other acts involved Appellant watching C.P. shower, and the instant rape occurred immediately after B.P. showered. Thus, the evidence suggested a continuum of behavior involving various degrees of sexual gratification concerning B.P. and C.P. We therefore find no abuse of discretion in admitting this evidence.

Next, we address Appellant's argument that the trial court improperly prevented him from cross-examining C.P. regarding her alleged use of drugs. On cross-examination, Appellant stated, "If they [Philadelphia Children's Alliance][4] said that you were using marijuana, Ecstasy, and prescription pills," at which point the Commonwealth objected. Appellant argues that the trial court erroneously sustained the objection.

We disagree. The law is clear that evidence of drug use is admissible only if it is relevant to some event related by the witness.

> While this Court has consistently held that "intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration," **Commonwealth v. Small**, 559 Pa. 423, 741 A.2d 666, 677 (1999) (citations omitted), the jury should *not* consider for

_____

[4] The record indicates that Philadelphia Children's Alliance and the Department of Health and Services interviewed C.P., presumably due to these crimes.

> impeachment purposes the use of drugs or alcohol at other irrelevant times.

*Commonwealth v. Harris*, 852 A.2d 1168, 1174 (Pa. 2004) (emphasis in original). Herein, there is no indication whatsoever that the victim was under the influence at any time relevant to her testimony. Instead, Appellant sought to introduce this evidence to generally besmirch C.P.'s character. The trial court properly ended that line of inquiry.

Appellant's fourth issue claims that the trial court improperly seated five jurors: numbers five, nine, ten, eleven, and twelve. He suggests that all of these jurors should have been struck for cause, but develops no argument whatsoever to support that allegation with the exception of juror number ten. We could find waiver on this basis, but decline to do so as our discussion of juror number ten requires us to set forth the principles that apply to all of his challenges.

Jurors should be disqualified for cause where "they do not have the ability or willingness to eliminate the influences under which they are operating and therefore cannot render a verdict according to the evidence." *Commonwealth v. Robinson*, 864 A.2d 460, 489 (Pa. 2004). The decision to disqualify a juror on these grounds "rests within the sound discretion of the trial court, must be based upon the juror's answers and demeanor, and will not be reversed in the absence of a palpable abuse of this discretion." *Id*. at 489 (citation omitted). Thus, the decision to accept or deny removal

for cause obviously depends on the issue being brought to the court's attention in the first place. "The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it." *Id*. at 490.

Turning to juror number ten, Appellant suggest that the trial judge has a duty to *sua sponte* remove a juror for cause when the judge knows the juror. Herein, the judge informed the parties of their limited relationship, stating that he and the juror had litigated a medical malpractice case against each other prior to the judge's election. The juror stated that the past relationship would have no bearing on his ability to serve as a fair and impartial juror. Additionally, counsel asked the judge if the two socialized, to which the trial court said no. Appellant then accepted the juror. While the fact a juror "has such a close relationship . . . with the . . . court" is a reason to grant a challenge for cause, ***Robinson***, ***supra*** at 489-90, Appellant cites no authority for the proposition that a trial court may somehow interfere with strategic decisions for accepting or rejecting a juror.

Thus, we find that since Appellant accepted juror number ten, he has waived any claim that the court improperly seated him. The same applies to juror numbers five, eleven, and twelve, all of whom he accepted without moving to strike for cause. N.T. Jury Selection, 5/20/13, at 43, 119, 127.

Relatedly, Appellant maintains that the trial court improperly permitted juror number nine to serve. Unlike the jurors discussed *supra*, Appellant did

move to strike this juror for cause, which the court denied. Appellant's counsel stated, "I still have a motion for cause, if not, I'm going to use a [peremptory] strike." *Id*. at 103. The trial court denied the motion for cause with explanation. *Id*. at 103-04. Appellant's counsel then stated, "After conferring with my client, we're going to accept." *Id*. at 104. Appellant has failed to address the effect of this action and why he has not forfeited any allegation of error respecting the failure to strike this juror. *See Commonwealth v. Frazier*, 369 A.2d 1224, 1231, n.4 (Pa. 1977) ("It is difficult to understand how a party can object to the acceptance of a juror where that party possessed peremptory challenges and failed to exercise them."). We therefore deem this claim forfeited.

Appellant's fifth argument claims that the trial court improperly permitted the jury to receive a transcript of the Commonwealth's expert witness's testimony. Appellant has failed to distinguish the expert's report from her testimony, as explained by the trial court's opinion:

> Defendant's fifth issue on appeal is a clear misrepresentation of the proceedings and inaccurately refers to several exhibits admitted into evidence. This issue is without basis and should be dismissed on appeal, as this Court did not permit the jury to receive a transcript of the trial testimony of Dr. Maria McColgan, the Commonwealth's medical expert witness, as doing so would clearly violate Pa.R.Crim.P 646(C).
>
> To the contrary, this Court, with defendant's counsel's consent and agreement, did permit the jury to review a redacted copy of Dr. McColgan's expert report during their deliberations. This instance arose from Juror Question #2 "We would like to see two Commonwealth exhibits; the medical expert and the report of

- 15 -

> the forensic interview form, PCA." N.T., 05 -23 -2103, P. 4, L. 4 -8. After reviewing this question with both defense counsel and counsel for the Commonwealth, the following discussion occurred out of the jury's presence:
>
> . . . .
>
> No error was committed by this Court, nor was any alleged error raised by defendant's counsel at the time. To the contrary, counsel stipulated on the record to the evidence to be reviewed by the jury during its deliberations.

Trial Court Opinion, 3/21/16, at 15-18. We agree. Since counsel for both parties and the trial court jointly agreed to provide the exhibits, and Appellant consented to that action, the trial court did not err. *Compare Commonwealth v. Woodard*, 129 A.3d 480 (Pa. 2015) (discussing submission of expert reports to the jury for deliberation where defense counsel objects).

Appellant's sixth issue grandly asserts that the Commonwealth "orchestrated the proceedings by a deliberate deception of the court and jury[.]" He cites *Brady v. Maryland*, 373 U.S. 83 (1963), but does not link those principles to any inaction or action by the Commonwealth. Instead, Appellant's argument is a variation of the argument discussed *infra*: that the absence of physical trauma meant that no rape occurred. "From (ALL THE EVIDENCE ON THE RECORD), an (U[N]BIAS[ED] TRIER of FACTS) Would See That The District Attorney Was Orchestrating The Proceedings." Appellant's brief at 23. This undeveloped and unsubstantiated argument results in waiver. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249

- 16 -

(Pa.Super. 2015) ("[Appellant] has made no effort whatsoever to discuss the applicable law or to link the facts of his case to that law. His failure to develop a coherent legal argument in support of his claim results in waiver of this issue.").

We now discuss Appellant's challenge to the sufficiency of the evidence. Appellant claims that the lack of physical trauma renders the rape "physically impossible," Appellant's brief at 26, and that any conviction was based on mere conjecture. Whether the evidence is sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015). Herein, the victim testified that Appellant followed her after a shower, touched her vagina with his penis, and inserted his penis into her anus. This testimony clearly satisfies the elements of the rape by forcible compulsion offense. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 720 (Pa.Super. 2015) ("The Crimes Code defines rape in pertinent part as follows: "A person commits a felony of the first degree when the person engages in sexual intercourse

with a complainant . . . by forcible compulsion."). Contrary to Appellant's argument, physical trauma is not an element of the crime. ***See Commonwealth v. Minerd***, 753 A.2d 225 (Pa. 2000) (Commonwealth permitted to present, in its case-in-chief, expert testimony that lack of physical trauma does not disprove rape is permissible in Commonwealth's case-in-chief; jurors may naturally expect physical trauma). Moreover, the victim's testimony standing alone is sufficient to convict. "A rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction." ***Commonwealth v. Wall***, 953 A.2d 581, 583 (Pa.Super. 2008). Accordingly, sufficient evidence supported the rape verdict.

Appellant also purports to challenge the weight of the evidence. He largely repeats the same argument presented in connection with his sufficiency claim. Specifically, he maintains that the lack of physical trauma renders rape impossible, and highlights the following testimony presented at trial in his defense. Appellant's coworker testified that Appellant was at work on January 3, 2012, the date supplied to Officer Johnson by B.P. as the date of the crime. Appellant also introduced a copy of B.P.'s mother's lease, which showed that the family had moved from their residence in late 2011. Therefore, in addition to rape being "physically impossible", Appellant urges us to find that this evidence is conclusive proof that the rape could not have occurred at the mother's house in January of 2012.

Appellant properly preserved this issue in a post-sentence motion and the trial court addressed the claim. *Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016) ("[A] defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance."). The trial court rejected the claim, finding that the jury weighed all of this testimony and that the verdict was not so contrary as to shock one's sense of justice. In reviewing this conclusion, we do not review the underlying weight of the evidence claim; instead, we review the judge's exercise of discretion in ruling on the claim. "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Smith*, 146 A.3d 257, 264–265 (Pa. Super. 2016) (citation omitted).

We discern no such abuse of discretion. To the extent Appellant's argument regarding the specific date of the crime goes to weight, and not sufficiency, the Commonwealth is not required to establish the precise date in general, but must "fix the date when an alleged offense occurred with reasonable certainty[.]" *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa.Super. 2003) (citation omitted). Thus, the Commonwealth is given some leeway in general, and that principle applies with even greater force when the victim is a child.

> When a young child is a victim of crime, it is often impossible to ascertain the exact date when the crime occurred. He or she may only have a vague sense of the days of the week, the months of the year, and the year itself. If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated.

*Luktisch*, *supra* at 880 (quoting *Commonwealth v. Groff*, 548 A.2d 1237, 1242 (Pa.Super. 1988)).  Accordingly, the trial court committed no abuse of discretion in denying the weight claim.

Finally, we agree that Appellant is entitled to relief on his sentencing claim.  He received a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718, which was subsequently declared unconstitutional by *Wolfe*, *supra*.  While the trial judge imposed a sentence higher than the mandatory minimum, the court's sentencing scheme may be disrupted.  Hence, we vacate judgment of sentence at all counts and remand for resentencing.

Judgment of sentence is vacated and the matter is remanded for resentencing.  Appellant's convictions are affirmed in all other respects.  Jurisdiction relinquished.

Judge Moulton joins the memorandum.

President Judge Emeritus Stevens files a concurring memorandum in which Judge Bowes joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2017