J-A29015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA JAMES STUMP | : | |
| | : | |
| Appellant | : | No. 205 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 18, 2019
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000701-2018

BEFORE:  DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                 **FILED DECEMBER 23, 2020**

Appellant Joshua James Stump appeals from the Judgment of Sentence[1] imposed after a jury found him guilty of two counts of Criminal Solicitation to Commit Sexual Abuse of Children, two counts of Criminal Solicitation-Corruption of Minors, and one count of Terroristic Threats.[2]  Appellant challenges the weight and sufficiency of the evidence, and the court's application of 42 Pa.C.S. § 9718.2, the sentencing statute mandating a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant filed his appeal from the trial court's January 10, 2020 denial of his Post-Sentence Motion. However, the appeal properly lies from the Judgment of Sentence imposed on September 18, 2019. **Commonwealth v Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*).  We have corrected the caption accordingly.

[2] 18 Pa.C.S. §§ 902, 6312(b)(1) and (c), 6301(a)(1)(i), and 2706(a)(1), respectively.

minimum term of incarceration for recidivist sexual offenders. After careful review, we affirm.

We glean the following factual and procedural history from the certified record, including the trial court's opinions. In late 2017 and into early 2018, Appellant solicited his girlfriend of seven years, L.L., to film sexual encounters with her then-14-year-old twin sons, M.L. and R.L., in addition to two unrelated boys, "to prove you are not cheating on me." Tr. Ct. Op., dated Jan. 10, 2020, at 1-2 (citing N.T.). When she refused or otherwise stalled in fulfilling his requests, Appellant threatened to leave her, hurt her, and harm her children. Appellant relayed many of his requests and threats via text message to L.L. L.L.'s son, M.L., refused L.L.'s multiple requests, ran away, and began living with his father. M.L. eventually told a friend about L.L.'s repeated requests to film him masturbating and her request to make a sex tape with her, and the friend's parent alerted the police. Meanwhile, L.L. did film her other son, R.L., who is autistic, ejaculate as he watched pornography on his phone. She sent the video to Appellant by text and also watched it with him.

On January 28, 2018, just after midnight, R.L. called 911 to report that L.L. had threatened to commit suicide. When Pennsylvania State Police ("PSP") patrol officers arrived at L.L.'s home, she told the officers about her relationship with Appellant, his requests for the child sex videos, and his threats to leave and/or harm her. She further explained that, over the past 12 hours, she had been arguing with Appellant through text messages and

phone calls about her refusal to tape herself engaging in sexual acts with her children and their friends. While she was speaking with the officers, Appellant called her phone to find out why she had called 911. L.L. handed the phone to the police officer who confirmed that he was speaking with Appellant. Appellant told the officer that he monitors L.L.'s cell phone usage online and saw a 911 call logged in. Before the officer left, he showed L.L. how to save screen shots of text messages and asked her to save them, and provide them, for police investigation.

After a thorough investigation, which included forensic interviews with L.L.'s two sons and the two unrelated boys at the Lebanon Children's Resource Center ("CRC"), the Commonwealth charged Appellant with 11 criminal offenses.[3]

At Appellant's jury trial on May 23, 2019, L.L., several CRC personnel, and the PSP investigators testified for the Commonwealth. Relevant to this appeal, L.L. testified regarding, among other things, Appellant's numerous requests for her to record videos of the children engaged in sex acts with themselves and with her. She stated that she feared if she did not comply, that Appellant would leave her. L.L. also testified that Appellant threatened physical violence towards her and her children if she did not make and share the videos with him. The Commonwealth authenticated a printout of the

_____

[3] The Commonwealth charged L.L. separately. She is not a party to this appeal.

screen shots of text messages that L.L. provided to the PSP, and the trial court admitted the exhibit. The admitted text messages between Appellant and L.L. corroborated L.L.'s testimony that Appellant had repeatedly asked her to make and share explicit videos of child pornography.

Violet Witter, a forensic child interviewer with the CRC, testified that she interviewed M.L. The court admitted the video recording of that interview and Ms. Witter's written report. In addition, Shannon Cossaboom, the CRC supervisor and also a forensic child interviewer, testified that she interviewed R.L., and the court admitted the recording of that video and Ms. Cossaboom's summary report. By agreement between the parties, the Commonwealth played portions of both boys' interviews for the jury.

PSP Trooper Justin Prevost testified regarding his responding to R.L.'s 911 call, and his discussions with L.L and Appellant that occurred on January 28, 2018. Trooper Prevost also testified that he taught L.L. how to take screen shots of texts to save them; two days later, he retrieved a memory device from her and printed out the screen shots.

PSP Criminal Investigator Matthew Templin also testified regarding his investigation, which involved speaking with Appellant.

Both M.L. and R.L. testified at trial that they had told the truth during their CRC interviews. The parties stipulated that the CRC interviews would serve as the bulk of their testimony. In addition, M.L. testified that he stopped living with his mother after her request that he make a sex tape with her, and

that he told many friends about the request. R.L. testified that he called 911 on January 28, 2018, after his mom and Appellant had been fighting.

The Commonwealth did not present testimony from the unrelated boys with whom Appellant had implored L.L. to engage in filmed sexual acts. The parties stipulated that the unrelated boys would testify as to their birthdates.

After instructing the jury and receiving no objections to the instructions from counsel, deliberations proceeded. The jury acquitted Appellant of six offenses that pertained to the unrelated boys, and found him guilty of the five charges set forth above. The court ordered an evaluation with the Sexual Offenders Assessment Board (SOAB)[4] and a Pre-Sentence Investigation.

On September 18, 2019, the court imposed an aggregate sentence of 26-55 years' incarceration.[5] Appellant filed a Post-Sentence Motion, which the court denied by Order and Opinion on January 10, 2020.

_____

[4] Appellant stipulated that he had been convicted in 2015 for sexual offenses involving his minor daughter. After the SOAB evaluation, but before sentencing, Appellant and the Commonwealth stipulated that Appellant is a Tier 3 sexual offender required to register for his lifetime with the Pennsylvania State Police pursuant to SORNA.

[5] Prior to imposing sentence, the court first held a hearing to address Appellant's violation of the conditions of his parole ("VOP") imposed in his 2015 sexual offense case docketed at CR-1012-2013. After the court imposed a VOP sentence, it then imposed sentence in the instant case pursuant to 42 Pa.C.S. §9718.2. Because Appellant had a prior conviction, the court sentenced him to two mandatory minimum terms of 25 years' incarceration for the Solicitation of Child Sexual Abuse convictions. The court ordered the aggregate sentence imposed in this case to run consecutive to the VOP sentence.

Appellant timely appealed. Appellant filed a Pa.R.A.P. 1925(b) Statement and the court filed a Rule 1925(a) Opinion.

Appellant raises the following issues for our review:

1.  Was the denial of the request for a judgment of acquittal manifestly unreasonable, where the court did not give proper weight to the overwhelming amount of evidence showing the Commonwealth's chief witness to be a self-serving liar and where there was no reliable forensic evidence to corroborate her narrative?

2.  Did the [h]onorable [c]ourt abuse its discretion in admitting into evidence Exhibit 1, being purported text messages, where the images lacked authentication as they came from the Commonwealth's witness, not a reliable third party phone provider?

3.  Was there insufficient evidence?

4.  Did the [h]onorable [c]ourt err in omitting from its jury charges the requested 'False in One, False in All' instruction, where defense counsel requested it, and due to its omission there was a reasonable likelihood that the jury therefore failed to consider that it could discount the entirety of the Commonwealth's case, having been founded entirely on the testimony of the Commonwealth's witness, a proven liar, and that the jury therefore improperly ignored constitutionally relevant evidence suggesting innocence?

5. Did the [h]onorable [c]ourt err in imposing the minimum mandatory jail sentence, thus making an error of law?

Appellant's Brief at 4-5 (reordered).

**Weight of the Evidence**[6]

---

[6] In his Pa.R.A.P. 1925(b) Statement, Appellant challenged the weight of the evidence but did not specifically challenge the trial court's exercise of its discretion in denying his Motion for Judgment of Acquittal. We, thus, review

Appellant first asserts that "[t]he evidence demonstrating the sole guilt of [L.L.] should have been given such great weight that it carried the day." Appellant's Brief at 10. Appellant supports his assertion with a prolix recitation and self-serving interpretation of L.L.'s testimony and concludes that the court erred in declining to grant him a new trial based on the jury's failure to weigh the evidence properly. Appellant's Brief at 11-21.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (brackets and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of

---

the weight of the evidence claim, but not the propriety of the denial of his request for a Judgment of Acquittal. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (setting forth bright line rule that issues not raised in a Rule 1925(b) Statement are waived).

whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of

the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

In addressing Appellant's weight claim, the trial court set forth the applicable standard of review and relevant case law before opining:

> In this case, [L.L.] provided incriminating testimony against [Appellant]. [L.L.] acknowledged that she was intimately familiar with [Appellant] and that she was with him almost every day. She described in detail [Appellant's] perverted proclivities. [L.L.] testified that [Appellant] pleaded, prodded and even threatened her to make sexually explicit videos with underage boys. [L.L.] testified that she eventually created a video of her son masturbating in a bathroom.
>
> To be sure, [L.L.] herself was charged with crimes as a result of what occurred with her children. To be sure, [L.L.] did have a motive to provide testimony that inculpated someone else for the behavior with which she was charged. . . .
>
> What [Appellant] so conveniently overlooks in his arguments is the corroborating evidence for [L.L.'s] testimony in the form of text messages from him that she copied. . . .
>
> [Messages omitted]
>
> * * *
>
> [N]one of the verdicts shocked the conscience of this [c]ourt in a way that would render them against the weight of evidence[.]

Tr. Ct. Opinion, dated Jan. 10. 2020, at 7-10.

We discern no abuse of discretion in the trial court's denial of Appellant's request for a new trial based on the weight of the evidence. In addition to L.L.'s testimony, the trial court heard the testimony from the PSP investigators, M.L., R.L., and others. The court observed the witnesses and

reviewed the documentary evidence admitted at trial, including the text message screen shots and R.L. and M.L.'s forensic interviews. Applying relevant case law, the trial court properly exercised its discretion in declining to reweigh the evidence and disturb the jury's credibility determinations.

Appellant is now asking this Court to reweigh L.L.'s testimony to reach his credibility determination. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the Court's conscience. Accordingly, the court did not err in denying Appellant's request for a new trial based on the weight of the evidence.

**Authentication**

Immediately following his weight argument, but without a separate heading, Appellant attempts to address his second issue.[7] Appellant contends that the Commonwealth did not authenticate the printout of the screen shots

---

[7] Appellant has not complied with the briefing requirements set forth in our rules of appellate procedure. Rule 2119(a) dictates that an argument "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). The Pennsylvania Supreme Court has clearly stated that "[t]he briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference[.]" **Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011). "[C]ompliance with these rules by appellate advocates . . . is mandatory." **Id**. **See also** Pa.R.A.P. 2101 (requiring conformance "in all material respects with the requirements of [the briefing rules.]") Notwithstanding Appellant's briefing defect, we decline to find waiver on this basis.

of the incriminating text messages and, thus, their admission "over counsel's objection, should be disquieting." Appellant's Br. at 21-22.

"The admissibility of evidence is a matter solely within the discretion of the trial court. This Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs." *Commonwealth v. Johnson*, 638 A.2d 940, 942 (Pa. 1994) (citation omitted). However, "where the evidentiary ruling turns on a question of law[,] our review is plenary." *Buckman v. Verazin*, 54 A.3d 956, 960 (Pa. Super. 2012) (citations omitted).

Here, Appellant has challenged the court's finding that the Commonwealth authenticated the screenshots of text messages from L.L.'s cell phone. Rule 901 of our rules of evidence addresses the proper authentication of evidence.

In order to authenticate proffered evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Evidence may be authenticated in a variety of ways, including with testimony from witnesses with knowledge "that an item is what it is claimed to be." *Id.* at 901(b)(1). Evidence can also be authenticated by the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* at 901(b)(4). In addition, to connect text messages with a particular person, authentication may be demonstrated with either "direct evidence such as testimony of a person with personal knowledge[,]" or

- 11 -

"circumstantial evidence, such as . . . identifying content[,] or proof of . . . access to a device or account at the relevant time when corroborated by circumstances indicating authorship." Rule 901(b)(11)(A) and (B)(i) and (ii). Although "[c]ircumstantial evidence of . . . access to a device or account alone is insufficient for authentication of authorship of digital evidence . . . this evidence is probative in combination with other evidence of the author's identity." Rule 901*, Comment* (citations omitted)*.* Authenticity generally entails a "relatively low burden of proof." ***Commmonwealth v. Koch***, 106 A.3d 705, 713 (Pa. 2014) (Castille, J., in support of affirmance) (addressing generally authentication of text messages).

To support his authentication challenge, Appellant avers that the copies of the admitted messages were "one-sided," and implies that L.L. could have altered the text conversations before printing out the screen shots. Appellant's Br. at 22.

The trial court addressed Appellant's claim by noting the following authentication evidence presented to the jury through L.L.'s testimony:

> • The text number in question was regularly used by [L.L.] to communicate with [Appellant].
>
> • The telephone number used for text messages was used by [L.L.] and [Appellant] to communicate about regular ordinary everyday life matters. When those matters were discussed, via text, the events described occurred.
>
> • [L.L.] testified that she never communicated with any other human being at the telephone number in question.

• The telephone number in question was used by [L.L.] to communicate with [Appellant] while Trooper Prevost was present. Trooper Prevost spoke with [Appellant] using that telephone number.

• The telephone number in question was used for verbal communications in addition to text messages. When verbal communications occurred, [L.L.] heard [Appellant's] voice, which she recognized.

Tr. Ct. Op., dated Apr. 3, 2020, at 8-9 (citing N.T. Trial at 34-36).

The trial court further noted that some admitted text messages "revealed that the sender knew information about [L.L.] such as where she was located and what type of car was parked in her driveway." *Id*. at 9, citing Exh. 1. In addition, the court noted the sexual content of the text messages from Appellant and quoted the text message from Appellant asking L.L. to delete the text conversation about the movie so "that if they [police officers] want to see your phone again it's not on there." *Id*., quoting Exh. 1. Based on the above, the court opined that "[n]o human being other than [Appellant] would have had the motive or knowledge to send such texts." *Id*. at 9. The court concluded that the texts provided sufficient contextual clues to support its conclusion that the Commonwealth met its "'relatively low burden of proof' to establish that the text messages were in fact sent by [Appellant]." *Id*.

We agree with the trial court's conclusion. In arguing that the screen shots were not authenticated as accurate depictions of conversations between L.L. and himself, Appellant ignores the fact that the trial court, after his attorney lodged his objection, extensively questioned L.L. to establish that the

screen shots were text messages that came from Appellant. ***See***, ***e.g.***, N.T. Trial, 5/23/19, at 34-37. Further supporting the screen shots authenticity, Trooper Provost testified that he spoke with Appellant from L.L.'s phone which displayed the same phone number as that printed on the screen shots. N.T. at 115-17.

We discern no abuse of the court's discretion in admitting the screen shots into evidence. Appellant's claim, thus, fails.

## **Sufficiency of the Evidence**

Appellant next challenges the sufficiency of the evidence. Appellant's Br. at 25. In support, Appellant relies entirely on his discussion addressing his challenge to the weight of the evidence and then concludes that the text messages "do not support a single one of the aforementioned charges." ***Id***. at 25. He then summarily concludes that because the jury acquitted him of six charges pertaining to the two unrelated children, he should have been acquitted of all charges on the basis of insufficient evidence. ***Id***. at 25-26. Appellant's argument is woefully undeveloped and he has, thus, waived this challenge.

The Pennsylvania Supreme Court has stated:

[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. *See also* Pa.R.A.P. 2119(a) (each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"). It is not the obligation of this Court . . . to formulate [an a]ppellant's arguments for him.

- 14 -

***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (some citations omitted).

In his one-page, two-paragraph argument, Appellant does not delineate which of the three offenses he is challenging as unsupported by the evidence. In addition, Appellant's brief fails to develop an argument with citation to the record and pertinent authority.[8] ***See*** Pa.R.A.P. 2119 (c), (d) (requiring reference to the record and a synopsis of all evidence relevant to the point raised). Due to his omissions, we are unable to conduct meaningful review. Accordingly, Appellant's sufficiency challenge is waived.

### Jury Instruction

Appellant next contends that the court erred in not giving his requested "false in one, false in all" jury instruction, and "[s]uch omission cannot be said, beyond a reasonable doubt, to be harmless." ***Id***. at 27. Counsel also acknowledges that he did not object to the absence of the requested instruction following the court's final instructions. ***Id***.

_____

[8] Appellant cites one case, ***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000), before summarily concluding L.L.'s "assertions defied logic and reasonable human experience, and completely lacked corroboration." Appellant's Br. at 25. The crux of ***Widmer*** was the Supreme Court's determination that the Superior Court erred in intermingling the standards of review applicable to sufficiency and weight challenges. Appellant provides no discussion informing this Court of the relevance of the ***Widmer*** Court's reasoning or holding to his case. ***See*** Pa.R.A.P. 2119(a) (requiring discussion of cited authority).

Appellant's argument is, again, woefully underdeveloped. Aside from a lengthy block quote setting forth general legal principles applicable to review of jury instructions, Appellant again fails to develop his issue with reference to the record and a meaningful, developed discussion with citation to relevant case law. "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018), *appeal denied*, 217 A.3d 180 (Pa. 2019) (citations and brackets omitted). Accordingly, this issue is waived.

### Mandatory Minimum Sentence

In his final issue, Appellant challenges the court's imposition of the mandatory 25-year minimum sentence as provided in 42 Pa.C.S. § 9718.2, the sentencing provision applicable to recidivist sexual offenders. Appellant's Br. at 28. The jury's verdict of Appellant's guilt of Solicitation to Commit Sexual Abuse of Children triggered the application of the mandatory sentence under Section 9718.2 due to Appellant's prior conviction of a sexual offense. *See* 42 Pa.C.S. § 9718.2(a)(1) (referencing 42 Pa.C.S. § 9799.14 for prior offenses considered for purposes of applying the recidivist sentencing statute). Appellant contends that the sentence is illegal because his prior convictions "should constitute an '*Alleyne*[9] fact,' as the Supreme Court found

---

[9] *Alleyne v. United States*, 570 US 99 (2013).

in **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016)." Appellant's Br. at 28.   Appellant's contention is not supported by law.

As a preliminary matter, we note (as did Appellant) that the **Wolfe** Court addressed **Alleyne** in the context of Section 9718, not Section 9718.2. **See Wolfe**, **supra** at 663.   **Wolfe** is, therefore, inapplicable in this case.

In **Alleyne**, the U.S. Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt. 570 U.S. at 116.   However, this Court previously observed that

> [p]rior convictions are the remaining exception to **Apprendi v. New Jersey**, 530 U.S. 466, [] (2000), and **Alleyne**. . . , insofar as a fact-finder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right. **See Almendarez-Torres v. United States**, 523 U.S. 224 [] (1998).

**Commonwealth v. Hale**, 85 A.3d 570, 585 n.13 (Pa. Super. 2014).

Because Appellant's mandatory minimum sentences imposed under Section 9718.2 are premised on his prior conviction, **Alleyne** does not render his sentences unconstitutional.   This claim, thus, fails.

### Conclusion

Having found Appellant's claims to be meritless or waived, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2020