J-S45025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                                      :
           v.                        :
                                      :
CHASE J. RIPLEY                 :
                                      :
           Appellant        :   No. 802 MDA 2025

Appeal from the Judgment of Sentence Entered January 30, 2025
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000765-2023

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:         **FILED JANUARY 23, 2026**

Chase J. Ripley (Appellant) appeals from the judgment of sentence entered following his convictions of one count each of involuntary deviate sexual intercourse – complainant less than 16 years old and defendant is four or more years older (IDSI) and statutory sexual assault, and two counts of indecent assault.[1]  Appellant's counsel, Jordan T. Leonard, Esquire (Counsel), has also filed a petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).  After careful consideration, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1(b), 3126(a)(8).

The underlying charges arose from Appellant's sexual contact with two minors, S.M.W., a/k/a A.W., and B.M.S. The Commonwealth charged Appellant, via criminal information, with IDSI, statutory sexual assault, sexual assault, and indecent assault as to A.W.; and attempted aggravated indecent assault, unlawful contact with a minor, and indecent assault as to B.M.S.[2] Prior to trial, the Commonwealth gave notice of its intent to pursue the mandatory minimum sentence under 42 Pa.C.S.A. § 9718(a)(1) (requiring a 10-year mandatory minimum sentence for IDSI when the victim is less than 16 years old).

Following a jury trial, Appellant was convicted of one count each of IDSI and statutory sexual assault, and two counts of indecent assault. The jury acquitted Appellant of the remaining offenses. The trial court deferred sentencing pending preparation of a pre-sentence investigation report.

On January 30, 2025, the trial court sentenced Appellant to an aggregate 10½ to 22 years in prison, followed by 3 years' probation. The trial court also advised Appellant of his lifetime registration and notification requirements as a Tier III sexual offender under the Sexual Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.42.

Appellant filed a timely post-sentence motion, which included a motion for judgment of acquittal, a motion for resentencing without the mandatory

---

[2] 18 Pa.C.S.A. §§ 901, 3125(a)(1), 6318(a)(1).

minimum sentence, and a motion to modify sentence. The Commonwealth filed an answer. On May 15, 2025, the trial court entered an order dismissing Appellant's post-sentence motion.[3] On June 16, 2025, Appellant filed a timely *pro se* notice of appeal.[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.[5]

Subsequently, on November 14, 2025, Counsel filed in this Court a petition to withdraw from representation and an accompanying ***Anders*** brief. Appellant did not retain separate counsel or file a response raising any additional issues.

---

[3] Appellant was represented by private counsel, Kyle W. Rude, Esquire (Attorney Rude), throughout trial and the filing of the post-sentence motion. Before the trial court disposed of the post-sentence motion, Attorney Rude moved to withdraw as counsel. Appellant filed a *pro se* document in the trial court, indicating he did not object to Attorney Rude's withdrawal and wished to be appointed public defender counsel. On July 3, 2025, the trial court granted Attorney Rude permission to withdraw from representation and appointed Counsel to represent Appellant on direct appeal.

[4] Appellant filed his *pro se* notice of appeal before Attorney Rude was granted leave to withdraw from representation. "In this Commonwealth, hybrid representation is not permitted." ***Commonwealth v. Williams***, 151 A.3d 621, 623 (Pa. Super. 2016). However, "[b]ecause a notice of appeal protects a constitutional right," "this Court is required to docket a *pro se* notice of appeal despite Appellant being represented by counsel…." ***Id.*** at 624. The clerk of courts therefore correctly docketed Appellant's timely *pro se* notice of appeal. ***See id.***

[5] On November 12, 2025, this Court dismissed the appeal based on Appellant's failure to file an appellate brief. Upon application by Counsel, this Court reinstated the appeal.

We address Counsel's petition to withdraw before considering the issues raised in the **Anders** brief. **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) ("When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." (citation omitted)). Counsel seeking to withdraw from representation must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to **Commonwealth v. Santiago**, 978 A.2d 249 (Pa. 2009), counsel must also

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Cartrette**, 83 A.3d at 1032 (citing **Santiago**, 978 A.2d at 361). Once counsel has complied with the procedural requirements, we review the record and render an independent judgment as to whether the appeal is wholly frivolous. **See Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Instantly, Counsel filed an *Anders* brief and a separate petition to withdraw from representation. In his petition to withdraw, Counsel stated he made a thorough review of the record and concluded Appellant's appeal is frivolous. *See generally* Petition to Withdraw as Counsel, 11/14/25. Additionally, Counsel sent a letter to Appellant informing him of Counsel's intention to withdraw, and advising Appellant of his right to retain new counsel or proceed *pro se* to raise additional claims. The record reflects that Counsel furnished Appellant with copies of the petition to withdraw and the *Anders* brief. The *Anders* brief summarizes the factual and procedural history of this appeal, identifies the issues Appellant wishes to raise, and explains Counsel's reasons for concluding that the appeal is wholly frivolous. As Counsel has substantially complied with the procedural requirements of *Anders* and *Santiago*, we review the record to determine whether Appellant's appeal is wholly frivolous.

In the *Anders* brief, Counsel raises the following issues for review:

1. Whether the [trial] court erred in imposing a mandatory minimum penalty upon [Appellant] following his conviction of [IDSI], when such mandatory minimum penalty was found unconstitutional by the Pennsylvania Supreme Court in *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016)[?]

2. Whether the [trial] court erred in imposing a sentence greater than the statutory maximum penalty of 20 years, 18 Pa.C.S.[A.] § 1103(1), following [Appellant's] conviction of [IDSI], a felony of the first degree, when it imposed a sentence of ten to twenty years['] incarceration followed by three years of probation[?]

3. Whether [the] trial court erred in denying [Appellant's] post[-sentence] motion for judgment of acquittal when the verdict was

- 5 -

against the weight of the evidence[, and] the verdict shocks the conscious of one's sense of justice[?]

**Anders** Brief at 5 (some capitalization modified).[6]

In his first claim, Appellant asserts the trial court erred by imposing the mandatory minimum sentence for IDSI, as our Supreme Court in **Wolfe** declared 42 Pa.C.S.A. § 9718 unconstitutional. **Anders** Brief at 22. Counsel claims, however, that this claim is without merit because section 9718 was amended in 2019 to rectify the constitutional defects identified in **Wolfe**. **See id.** at 24-27.

"[A] challenge to the application of a mandatory minimum sentence is a non-waivable challenge to the legality of the sentence." **Commonwealth v. Lawrence**, 99 A.3d 116, 122 (Pa. Super. 2014) (citation omitted). "When the legality of a sentence is at issue on appeal, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Prince**, 320 A.3d 698, 700 (Pa. Super. 2024) (citation omitted).

In **Wolfe**, our Supreme Court considered **a prior version of Section 9718(a)(1)**, which required imposition of a 10-year mandatory minimum sentence for IDSI crimes where the complainants were less than 16 years old. 42 Pa.C.S.A. § 9718(a)(1) (2014). Importantly, in that version, the statute specified "its provisions 'shall not be an element of the crime,' and that the applicability 'shall be determined at sentencing,' with factual matters being

---

[6] The Commonwealth did not file an appellate brief.

resolved by the sentencing court 'by a preponderance of the evidence.'" **Wolfe**, 140 A.3d at 653 (citing 42 Pa.C.S.A. § 9718(c) (2014)). The **Wolfe** Court held section 9718(a)(1) was "irremediably unconstitutional on its face," as the directive for judicial fact-finding violates **United States v. Alleyne**, 570 U.S. 99, 103 (2013) (holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt.").

Instantly, as the trial court correctly pointed out, section 9718 was amended in 2019 to address the judicial fact-finding provision declared unconstitutional in **Wolfe**. Trial Court Opinion, 9/9/25, at 4-5. In particular, the 2019 version of section 9718(c)—under which Appellant was sentenced—provides as follows:

> **(c) Application of mandatory minimum penalty.--**With the exception of prior convictions, any provision of this section that requires imposition of a mandatory minimum sentence shall constitute an element enhancing the underlying offense. Any enhancing element must be proven beyond a reasonable doubt at trial on the underlying offense and must be submitted to the fact-finder for deliberation together with the underlying offense. If the fact-finder finds the defendant guilty of the underlying offense, the fact-finder shall also decide whether any enhancing element has been proven.

42 Pa.C.S.A. § 9718(c) (2019).

The trial court concluded Appellant's claim clearly lacks merit:

> The record of this case shows that the determination of the applicability of the age-related mandatory minimum sentence provided for in Section 9718 for IDSI was in strict accordance with the due process mandates identified by the **Wolfe** [C]ourt as they are now set out in subsection (c) of the amended statute.

- 7 -

Specifically, the specific elements of the crime at issue, *i.e.*, [IDSI], required the jury to find, *inter alia*, that the victim was less than 16 years of age. … In fact, [**Appellant**] **stipulated to the ages of** … **the victims**. … In light of these circumstances and the fact that the Commonwealth gave timely notice of its intention to seek application of the ten-year mandatory sentence under 42 Pa.C.S.[A]. § 9718, the trial court's imposition of the ten-year mandatory minimum sentence was appropriate.

Trial Court Opinion, 9/9/25, at 5-6 (emphasis added).

We agree that Appellant did not receive an illegal sentence. To be convicted of IDSI, the jury must have found, beyond a reasonable doubt, that Appellant engaged in deviate sexual intercourse with A.W. when A.W. was less than 16 years of age; Appellant was four or more years older than A.W.; and Appellant and A.W. were not married. **See** 18 Pa.C.S.A. § 3123(a)(7); **see also** N.T., 10/9/24 (p.m. session), at 218-29 (trial court instructing the jury on the elements of IDSI). Appellant stipulated to his date of birth and A.W.'s date of birth. N.T., 10/9/24 (a.m. session), at 7-8. Following deliberations, the jury found Appellant guilty of one count of IDSI as to A.W. At sentencing, the trial court properly applied the 2019 version of section 9718, which required no additional judicial fact-finding prior to imposition of the mandatory minimum sentence. Because the trial court imposed a constitutional sentence, Appellant's first claim lacks merit and is frivolous.

In his second claim, Appellant contends his IDSI sentence exceeds the statutory maximum. **Anders** Brief at 27-29. Appellant again challenges the legality of his sentence. Therefore, our standard of review is *de novo*, and our scope of review is plenary. **Prince**, 320 A.3d at 700.

IDSI is a first-degree felony, for which the statutory maximum sentence is 20 years' incarceration. 18 Pa.C.S.A. § 3123(a) (classifying IDSI as a first-degree felony); *id.* § 1103(1) (providing that a person convicted of a first-degree felony may be sentenced "for a term which shall be fixed by the court at not more than 20 years"). Instantly, for his IDSI conviction, the trial court sentenced Appellant to 10 to 20 years' imprisonment, followed by 3 years' probation.

While Appellant's sentence exceeds the maximum set forth in section 1103(1), "[Appellant] ignores the statutory exception to this general rule…." Trial Court Opinion, 9/9/25, at 6. As a Tier III sexual offender, Appellant was additionally subject to a mandatory 3-year probationary term pursuant to 42 Pa.C.S.A. § 9718.5, which provides, in relevant part, as follows:

> **(a) Mandatory probation supervision after release from confinement.--**A person who is convicted of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years **consecutive to and in addition to any other lawful sentence issued by the court**.
>
> **(b) Imposition.--**The court may impose the term of probation required under subsection (a) **in addition to the maximum sentence permitted** for the offense for which the defendant was convicted.
>
> **(c) Authority of court in sentencing.--**There shall be no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than provided for under subsection (a). Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

42 Pa.C.S.A. § 9718.5(a)-(c) (emphasis added). The provisions of section 9718.5 explicitly permit a court to impose the mandatory period of probation in addition to the statutory maximum sentence. Thus, as Appellant's sentence is legal, this issue merits no relief and is frivolous.

In his third claim, Appellant argues the trial court erred in denying his post-sentence motion for judgment of acquittal. **Anders** Brief at 29. Appellant claims the verdict was against the weight of the evidence, where the trial testimony of A.W. and B.M.S. "was clearly unbelievable to a degree that no reasonable juror could have rendered the underlying verdict." **Id.** at 30.

In particular, Appellant details the purported inconsistencies concerning the description of Appellant's penis[7] provided by A.W.:

A.W. testified she performed oral sex on Appellant in April 2023[, while she was 14 years old]. N.T., 10/9/24 (p.m. session), at 15. During her testimony, [A.W.] testified that Appellant's penis "had a lump, or wart, or something near the middle or some … somewhere near the middle of his penis." **Id.** at 20. The jury also heard [A.W.'s] forensic interview where [A.W.] described the bump on Appellant's penis as "a little darker" than the rest, and that it was "a light brown." **Id.**

[A.W.'s] description of Appellant's penis became a point of contention, especially after the Commonwealth introduced a picture of Appellant's penis as an exhibit, which was taken pursuant to a warrant issued during the underlying investigation. Although the [a]ffiant, [Troy Borough] Chief [Ralph Hunter] Dooley, testified he had observed "a discoloration," "almost like a

_____

[7] We note that Appellant does not argue the purported inconsistency between A.W.'s testimony and the photographs admitted during trial undermines A.W.'s identification of Appellant as the perpetrator.

birthmark looking discoloration," on Appellant's penis, *id.* at 121, the photographs he took, which were entered into evidence, did not show what he claimed to observe "as good as he had hoped." Further, Chief Dooley acquiesced on cross-examination as to the thoroughness of his investigation into the bump on Appellant's penis: "[Attorney Rude: I]t was described as a bump. You didn't see—you didn't run your finger over the penis and feel a bump," which Chief Dooley answered "N … no." *Id.* at 139.

The dispute of the veracity of the description of [A]ppellant's penis was intensified when Appellant called his estranged wife, Jessica Ripley. During Ms. Ripley's testimony, she confirmed that she was familiar with [Appellant's] penis and that in April of 2023 there was no lump on Appellant's penis[;] there was no dark spot on top of a lump on Appellant's penis[;] and there was no dark spot on Appellant's penis. *Id.* at 163-64.

**Anders** Brief at 31-32 (internal citation format modified).

Appellant's argument concerning the description of his penis offered by A.W., as compared to the photographic evidence, goes to the weight of the evidence. Although Appellant characterizes his third claim as a challenge to the weight of the evidence, "[a] motion for a judgment of acquittal challenges the *sufficiency* of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Emanuel**, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted; emphasis added). The trial court therefore addressed Appellant's final claim as a sufficiency challenge, and we will do the same.[8]

_____

[8] Appellant's post-sentence motion did not include a challenge to the weight of the evidence, nor did Appellant raise a weight claim with the trial court prior

*(Footnote Continued Next Page)*

We adhere to the following standard of review:

Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

**Commonwealth v. Peters**, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citations and brackets omitted). Moreover, "[i]n the case of sexual offenses, the testimony of the victim alone is sufficient to convict … if the fact finder believes the victim." **Commonwealth v. Jette**, 818 A.2d 533, 535 (Pa. Super. 2003).

---

to sentencing. **See** Pa.R.Crim.P. 607(A) (providing that a challenge to the weight of the evidence supporting a conviction must be raised in the trial court "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion."). Accordingly, Appellant failed to preserve a weight claim for appellate review, and we cannot address this argument as a challenge to the weight of the evidence. **See Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009) (reiterating that because "appellate review of a weight claim is a review of the exercise of discretion," an appellant's failure to preserve a weight claim deprives the trial court of the opportunity to exercise its discretion, leaving this Court with "nothing to review on appeal.") (citation omitted); **see also Commonwealth v. Tukhi**, 149 A.3d 881, 888 (Pa. Super. 2016) (stating that under **Anders**, "[a]n issue that is waived is frivolous.").

Because Appellant advanced this argument as a challenge to the weight of the evidence, the **Anders** brief contains no argument concerning the sufficiency of the evidence. Ordinarily, this would result in waiver of the claim. **See** Pa.R.A.P. 2119(a) (providing that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); **see also Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (concluding that appellant waived challenge to the sufficiency of the evidence where he failed to set forth the elements of the crimes he was convicted of, identify which elements were not met, or cite to legal authority). Nevertheless, we will evaluate the sufficiency of the evidence supporting Appellant's convictions as part of our independent review. **See Yorgey**, **supra**.

Instantly, as to A.W., a jury convicted Appellant of IDSI under 18 Pa.C.S.A. § 3123(a)(7), which provides that

> [a] person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant … who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

**Id.** The Crimes Code defines "deviate sexual intercourse" as "[s]exual intercourse per os or per anus…." **Id.** § 3101.

Also concerning A.W., a jury convicted Appellant of statutory sexual assault, graded as a first-degree felony, which is defined as follows:

> **(b) Felony of the first degree.--**A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is

11 or more years older than the complainant and the complainant
and the person are not married to each other.

*Id.* § 3122.1(b). "Sexual intercourse," "[i]n addition to its ordinary meaning,

includes intercourse per os or per anus, with some penetration however slight;

emission is not required." *Id.* § 3101.

Finally, Appellant was convicted of two counts of indecent assault, with

one count each related to A.W. and B.M.S. The Crimes Code defines indecent

assault, in relevant part, as follows:

> **(a) Offense defined.--**A person is guilty of indecent assault if
> the person has indecent contact with the complainant, causes the
> complainant to have indecent contact with the person or
> intentionally causes the complainant to come into contact with
> seminal fluid, urine or feces for the purpose of arousing sexual
> desire in the person or the complainant and:
>
> * * *
>
> (8) the complainant is less than 16 years of age and the person
> is four or more years older than the complainant and the
> complainant and the person are not married to each other.

*Id.* § 3126(a)(8). The Crimes Code defines "indecent contact" as "[a]ny

touching of the sexual or other intimate parts of the person for the purpose of

arousing or gratifying sexual desire, in any person." *Id.* § 3101.

A.W. testified at trial that she first met Appellant when she was at

B.M.S.'s house. N.T., 10/9/24 (p.m. session), at 13. According to A.W.,

B.M.S. used to babysit for Appellant and knew Appellant's children well. *Id.*

A.W. then described the circumstances surrounding the sexual encounter with

Appellant in April 2023:

[W]e were outside in [B.M.S.'s] driveway, and [B.M.S.'s brother] was playing basketball. And [Appellant] came down the road with his kids, and we were just talking about … how he had to clean out his camper, or whatever. And he [said], "If you guys wanna come down and help, you can." And we denied at first. … [Appellant] ended up leaving, and then me and [B.M.S.] were just talking about it, and she was like, "Do you wanna go help? Like, we can go help." I was like, "I mean, if you want to, we can." So, we went down and [Appellant] was on his back porch. And I went and I asked [Appellant] for a cigarette. He gave me a cigarette, and we were just … talking about school, about … regular things— like, just normal conversation. And … when I was almost done finishing my cigarette, [Appellant] said, "You're gonna have to pay me back for that." And I told him I didn't have any money. And he said he didn't want money.

*Id.* at 14. A.W. stated, "[Appellant] kinda indicated that he wanted something else in return." *Id.* at 15.

A.W. described what next transpired:

[Appellant] made me and [B.M.S.] follow him to his room. And then … he closed his door. And he told [B.M.S.] to take off her shirt. … [Appellant] started … touching [B.M.S.] and kissing her, and … he was grabbing her boobs, and … kissing her boobs, sucking her nipples…. And … then, when [Appellant] was done with that, he made [B.M.S.] leave the room. … [H]e asking me to give him a blow job. And [Appellant] unbuckled his pants. Well, he tried to make me unbuckle his pants first, but I couldn't 'cause I had nails on. And, he did it himself. And then … I gave [Appellant] a blow job. And … when I was done, I went to go find [B.M.S.]….

*Id.* Further, according to A.W., Appellant asked her, "Would you want to come down next week and do a little more?" *Id.* at 18.

B.M.S. confirmed that Appellant lived within walking distance of her house, and she babysat Appellant's children. N.T., 10/9/24 (a.m. session), at 52-53. B.M.S. testified that Appellant had previously said and done things

- 15 -

that made her feel uncomfortable. *See id.* at 54-59 (B.M.S. recounting a day when she was babysitting at Appellant's house; when Appellant returned home, he asked whether B.M.S. was a good kisser, kissed her, and told B.M.S. he wanted to put his hand down her pants); *see also id.* at 59 (B.M.S. detailing another incident during which Appellant brought his children to B.M.S.'s house to play with other kids from the neighborhood, and Appellant made a comment suggesting to B.M.S. that he wanted to impregnate her).

B.M.S. also detailed the events of the day in April 2023 when she and A.W. went to Appellant's house. B.M.S. testified that she and A.W. each smoked a cigarette with Appellant, and Appellant told the complainants they had to repay him. *Id.* at 65. B.M.S. and A.W. followed Appellant to his bedroom. *Id.* at 66. B.M.S. testified as follows:

> [Appellant] did me first. He had pulled in and was grabbing of [*sic*] my breasts, and sucked on them, and then made out with me, and that's when I drew the line and I grabbed my stuff and I left.

*Id.*; *see also id.* at 68 (B.M.S. stating, "He put his mouth on my breasts first.").

The Commonwealth also presented the testimony of Brittney Mink-Eiklor (Ms. Mink-Eiklor), the executive director at The Children's House child advocacy center. *See* N.T., 10/9/25 (a.m. session), at 28. Ms. Mink-Eiklor interviewed A.W. and B.M.S. in connection with the police investigation. Ms. Mink-Eiklor described the forensic interview process, and explained the

purpose of the interview is to allow the child to tell her story without challenging the child's statements. *See id.* at 41-42.

The Commonwealth then introduced video recordings of A.W.'s forensic interviews, the contents of which were transcribed in the record. During her first forensic interview, A.W. relayed the events of the assault.[9] A.W. explained that she was outside B.M.S.'s house when Appellant walked up B.M.S.'s driveway with his children. N.T., 10/9/24 (p.m. session), at 38. As in her trial testimony, A.W. detailed the following events: Appellant asked if A.W. and B.M.S. wanted to help him clean out a camper on his property; the complainants initially said no, but ultimately decided to help; A.W. smoked a cigarette supplied by Appellant; and Appellant told A.W. she would have to pay him back. *See id.* at 38-39. A.W. stated that Appellant took the complainants to his bedroom, where he asked B.M.S. to remove her bra and "started kissing her and grabbing her boobs[.]" *Id.* at 46. After B.M.S. had left the room, A.W. explained,

> [Appellant] … grabbed my arms. He started kissing me and everything. And then he told me to get up, then he unbuckled his pants. Then [] he made me give him a blow job.

---

[9] A.W.'s first forensic interview took place on May 3, 2023. A.W. participated in a second forensic interview on August 10, 2023. Ms. Mink-Eiklor explained that Chief Dooley suggested the second interview. N.T., 10/9/24 (a.m. session), at 39; *see also id.* at 42 (acknowledging that Chief Dooley watched the interview and thought A.W. had forgotten something). Chief Dooley confirmed that he requested the second interview to ascertain whether A.W. could describe Appellant's penis). N.T., 10/9/24 (p.m. session), at 118.

*Id.* at 48; *see also id.* at 50 (A.W. stating Appellant made her touch his penis with her hand).

During her second forensic interview, A.W. again stated that Appellant made her give him a blow job. *Id.* at 76-77; *see also id.* at 78 (A.W. stating that Appellant moved her head while she gave him a blow job); *id.* at 76 (A.W. explaining, "[Appellant] made me give him a blow job. I don't really know how to – like, explain that he made me, 'cause he didn't really force me to. … I didn't know what was gonna happen if I tried not to."). A.W. recalled Appellant touching her and "kissing [her] chest." *Id.* at 77. A.W. then described Appellant's penis, using an item on the table for reference:

> [A.W.]: Um, [Appellant] has a – like, a little bump ….
>
> [Ms. Mink-Eiklor]: Okay.
>
> [A.W.]: … somewhere. I can't remember where, but I remember seeing a bump. … Um, he's circumcised. That's really all I remember.
>
> [Ms. Mink-Eiklor]: Okay. And, so, you said short, circumcised ….
>
> [A.W.]: And he had a bump.
>
> [Ms. Mink-Eiklor]: … and a bump. Tell me more about the bump.
>
> [A.W.]: It … didn't look like a genital wart. …. [I]t just looked like he was born with it, I guess?
>
> ….
>
> [A.W.]: … It was on the – like, top side.
>
> …
>
> [A.W.]: … Uh, so, it was – like, towards the middle.

*Id.* at 80-81; *see also id.* at 82 (A.W. describing the spot as "a little darker" and "light brown").

Further, Chief Dooley testified that, based on A.W.'s second forensic interview, he applied for and obtained a search warrant to photograph Appellant's penis. *Id.* at 119. Chief Dooley executed the search warrant and personally observed Appellant's penis. *Id.* at 121. Chief Dooley testified that he observed identifying marks to corroborate A.W.'s statements, explaining the following:

> [I]t was a discoloration on the shaft of the penis … between the head and scrotum, or the head and the body – towards the top. It'd be on his right top side. I'm looking at it through a picture – it's backwards…. [] And it's a discoloration. Um, it's hard to describe. Almost like a birthmark-looking discoloration.

*Id.* (paragraph break and statement by prosecutor omitted). Chief Dooley acknowledged the photographs, which were taken on an "old," "off-brand cell phone provided by the police department," were not as clear as he would have liked them to be. *Id.* at 122. According to Chief Dooley, the discoloration was more apparent in person than in the photographs. *Id.* at 124-25.

Upon review, we conclude the evidence presented at trial, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's convictions. We again emphasize that, during trial, Appellant stipulated to his date of birth, both A.W.'s and B.M.S.'s dates of birth, and the fact that he was never married to either complainant. N.T., 10/9/24 (a.m. session), at 7-8. Each of the above offenses required a finding concerning the complainant's

age, as well as Appellant's age in relation to the complainant. By virtue of Appellant's stipulation, the age-related element of each offense was satisfied.

A.W.'s testimony established that she performed oral sex on Appellant, at his instruction. "Oral sex, intercourse per os, is included in the definitions of both sexual intercourse and [IDSI]." **Commonwealth v. Banniger**, 303 A.3d 1085, 1092 (Pa. Super. 2023). From the verdict, it is clear the jury believed A.W.'s testimony, which sufficiently supports Appellant's convictions of both IDSI and sexual assault. **See Jette**, **supra** (stating that testimony of a sexual assault victim alone is sufficient to convict). The same testimony also establishes indecent assault as to A.W. **See Commonwealth v. Martin**, 323 A.3d 807, 820 (Pa. Super. 2024) (concluding complainant's testimony that the defendant's "genitals contacted her mouth" sufficiently established indecent assault).

As to the final conviction of indecent assault (relating to B.M.S.), B.M.S. testified at trial that Appellant kissed her, "grabbed" her breasts, and sucked on her breasts. **See** N.T., 10/9/24 (a.m. session), at 66, 68. A.W.'s description of the events corroborated B.M.S.'s testimony. **See** N.T., 10/9/24 (p.m. session), at 14. Appellant's contact with B.M.S.'s breasts, for purposes of sexual gratification, constitutes indecent contact. **See Commonwealth v. Fisher**, 47 A.3d 155, 157 (Pa. Super. 2012) (stating that breasts are an intimate part of the body); **see also id.** at 158 ("the Commonwealth need not produce evidence involving direct contact with sex organs in order for the

evidence to sufficiently establish indecent assault." (citation omitted)). Accordingly, the evidence presented at trial was also sufficient to support Appellant's conviction of indecent assault as to B.M.S. Appellant's challenge to the sufficiency of the evidence underlying his convictions lacks merit and is frivolous.

Finally, our independent review discloses no non-frivolous issues that Appellant could raise. We therefore grant Counsel's request to withdraw from his representation of Appellant and affirm Appellant's judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/23/2026